CIKLIN, J.
This case involves two loan agreements and the personal guaranties signed by the appellants, Kaye Pearson and Bob Moss (the “Guarantors”). Because we find that the personal guaranties signed by the Guarantors could be reasonably interpreted two different ways, we reverse that portion of the summary judgment holding the Guarantors liable for all obligations under two separate loan agreements.
Chub Cay Club Associates, Ltd. (“Chub Cay Club”) financed its development of a resort community in the Bahamas in part through two loans from Caterpillar Financial Services Corp. (“Cat Financial”). The first loan of $6.3 million was procured to purchase utility equipment (the “Equipment Loan Agreement”) and was entered into on August 7, 2006. The second loan pertained to the construction of a facility (the “Construction Finance Agreement”) and was entered into on September 28, 2007. The Construction Finance Agreement provided a maximum aggregate sum of $10.8 million to be paid in draws.
On the same day the Construction Finance Agreement was executed, September 28, 2007, the Guarantors each executed a Personal Guaranty (referred to collectively as the “Personal Guaranties”) in favor of Cat Financial. Referring to Chub Cay Club as the “Obligor,” the pertinent section of the Personal Guaranties provided:
SECTION 1. Guaranty of Obligor’s Indebtedness. Guarantor hereby absolutely, irrevocably and unconditionally agrees to, and by these presents does hereby: (a) guarantee the prompt and punctual payment, performance and satisfaction of all present and future indebtedness and obligations of Obligor to Cat Financial which Obligor now owes Cat Financial or which Obligor shall at any time or from time to time hereafter owe Cat Financial when the same shall become due, in connection with or arising out of that certain Construction Finance Agreement dated AUGUST 31, 2007 (the “CFA ”), and whether representing, principal, interest and/or late charges or other charges of an original balance, an accelerated balance, a balance reduced by part payment or a deficiency after sale of collateral or otherwise; and (b) undertake and guarantee to pay on demand and indemnify Cat Financial against all liabilities, losses, costs, attorney’s fees, and expenses which may be suffered by Cat Financial by reason of Obligor’s default or default of the Guarantor (with all of Obligor’s indebtedness and/or obligations as stated above (including all costs, fees and expenses) being hereinafter individually and collectively referred to under this Guaranty as Obligor’s “Indebtedness”, which Indebtedness shall be conclusively presumed to have been created in reliance upon this Guaranty). THIS GUARANTY SHALL BE CONTINUING, ABSOLUTE, AND UNCONDITIONAL.
Additionally, the Personal Guaranties also contained language that they “shall be construed liberally in favor of Cat Financial and shall be governed and construed in accordance with the substantive laws of the State of Tennessee without regard to the conflicts of laws principles thereof.”
Chub Cay Club failed to make its payments as required under the terms of both the Equipment Loan Agreement and the Construction Finance Agreement. On February 8, 2008, Cat Financial served demand letters upon Chub Cay Club and the Guarantors demanding payment of the entire amounts owed under the equipment and construction loans, totaling $13,658,477.17 plus interest. The Guarantors did not comply with the demand for *1171 payment and Cat Financial filed suit on April 16, 2008.
On February 9, 2009, Cat Financial filed a motion for summary judgment with the trial court, arguing that no genuine issue of material fact existed as to the Guarantors’ obligations primarily because the obligations originated from written contracts, which courts are to interpret based on the words contained within the four corners of the writings.
On July 17, 2009, a hearing on the motion for summary judgment was held. Subsequently, on August 12, 2009, the trial court issued an order granting the plaintiffs motion for summary final judgment, which provided that the Personal Guaranties were unambiguous and that the contractual language in the Personal Guaranties, “all present and future indebtedness,” meant and included obligations under both the Equipment Loan and Construction Finance Agreements. The trial court also ruled that Tennessee law treated guaranties as “special contracts” whose words were to be “taken as strongly against the guarantor as the sense will permit.” Finally, the trial court found that the Guarantors’ affirmative defenses and counterclaims failed as a matter of law or because no genuine issue of material fact existed.
The summary judgment required the Guarantors to pay $14,627,007.49 to Cat Financial which the Guarantors have timely appealed.
The Guarantors argue that the language of the Personal Guaranties did not encompass the earlier Equipment Loan Agreement of August 2006 but rather only the subsequent Construction Finance Agreement of September 2007. Cat Financial argues that the Personal Guaranties were clear and unambiguous as to which financial obligations they were intended to secure.
“The standard of review for summary judgment orders is de novo.” Sulkin v. All Fla. Pain Mgmt., Inc., 932 So.2d 485, 486 (Fla. 4th DCA 2006). “This Court may reverse a trial court’s grant of summary judgment if it finds that there was a genuine issue of material fact and that the moving party was not entitled to judgment as a matter of law.” Palm Beach Pain Mgmt., Inc. v. Carroll, 7 So.3d 1144, 1145 (Fla. 4th DCA 2009) (citation and internal quotation marks omitted). Additionally, “[a]ll doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available.” Lander v. Smith, 906 So.2d 1130, 1132 (Fla. 4th DCA 2005) (citation and internal quotation marks omitted).
Regarding the interplay of contract interpretation and summary judgments, this court has stated,
If a contract’s terms are clear and unambiguous, the “language itself is the best evidence of the parties’ intent and its plain meaning controls,” warranting summary judgment. See Fecteau v. Se. Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991). If, however, there are “two reasonable interpretations” of a contract, “summary judgment is inappropriate because there is a genuine issue of material fact.” Id. This is because “ ‘[w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties.’ ” Id. (quoting Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980)).
Palm Beach Pain Mgmt., 7 So.3d at 1145-46.
Because the parties agreed that Tennessee law shall govern any questions with respect to contract interpretation, each side strenuously argues its own take on *1172 Tennessee law. The rules of construction, however, are fairly clear.
“A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties.” Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn.2006) (citation and internal quotation marks omitted). The “plain meaning of the words in the document” should be used to ascertain the parties’ intent. Id. This means the “usual, natural, and ordinary meaning of the contractual language.” Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn.2001) (citation and internal quotation marks omitted). This requires courts to first determine whether the language used in the document is ambiguous. Allstate Ins. Co., 195 S.W.3d at 611. “If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties’ intent cannot be determined by a literal interpretation of the language.” Id. (citation omitted). Additionally, “[contractual language is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.” Id. (citation and internal quotation marks omitted). Thus, an ambiguity is not present “merely because the parties may differ as to interpretations of certain” contract provisions. Johnson, 37 S.W.3d at 896. Finally, Tennessee law treats guaranties as special contracts in which “the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit.” Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn.1975).
In the instant case, the trial court, stating, “Simply put, ‘all’ means ‘all’,” found no ambiguity in the Personal Guaranties. The trial court focused on part of section 1 of the Personal Guaranties, which stated in pertinent part that the Guarantors:
[Guarantee the prompt and punctual payment, performance and satisfaction of all present and future indebtedness and obligations of Obligor to Cat Financial which Obligor now owes Cat Financial or which Obligor shall at any time or from time to time hereafter owe Cat Financial when the same shall become due, in connection with or arising out of that certain Construction Finance Agreement dated AUGUST 31, 2007....
The trial court essentially read this provision to mean that the Guarantors were guaranteeing any and all indebtedness between Chub Cay Club and Cat Financial, regardless of when the obligations accrued. While this may be a reasonable reading of the contract terminology, another reasonable reading of the same language is that the Guarantors were only guaranteeing indebtedness “in connection with or arising out of that certain Construction Finance Agreement dated AUGUST 31, 2007.” In other words, it was just as reasonable to interpret the language to mean that the Personal Guaranties only reached debts that originated from the Construction Finance Agreement and not the preceding Equipment Loan Agreement that was already in effect for over a year when the Personal Guaranties were executed. Just because Tennessee law strictly interprets guaranties against guarantors does not mean that the normal rules of contract interpretation are abrogated. See Samick Music Corp. v. Hoy, No. M2008-00441-COA-R3-CV, 2008 WL 4682216, *3 (Tenn.Ct.App. Oct.22, 2008) (finding that “[e]ven if the terms of the agreement are read ‘as strongly against the guarantor as the sense will admit,’ ... [s]ense will only permit us to go as far as the plain, unambiguous terms of the agreement allow”).
Cat Financial attempts to clear up any ambiguous language in the Personal Guaranties by referencing terms appearing in *1173 the Construction Finance Agreement. Cat Financial asserts that the terms “indebtedness” and “obligations” are defined in the Construction Finance Agreement, and therefore those terms should help define the liability within the Personal Guaranties. A provision of the Personal Guaranties, however, appears to limit the construction of its language, stating:
SECTION 9. Construction. This writing is intended as a final expression of this Guaranty agreement and is a complete and exclusive statement of the terms of that agreement, provided however, that the provisions of this Guaranty shall be in addition to and cumulative of, and not in substitution, novation or discharge of, any and all prior or contemporaneous written guaranties or other written agreements by Guarantor (or any one or more of them), in favor of Cat Financial or assigned to Cat Financial by others, all of which shall be construed as complementing each other. Nothing herein contained shall prevent Cat Financial from enforcing any and all such other guaranties or agreements in accordance with their respective terms.
This language may suggest that no outside terms or definitions are to be used to interpret or understand the Personal Guaranties. The language may not be able to be read to include the Construction Finance or Equipment Loan Agreements because neither of those agreements involved the Guarantors as parties, but was instead between Chub Cay Club and Cat Financial. Therefore, it appears that the intent of the Personal Guaranties is for the terms used within them to'be exclusive to them and not based on any definition found in the Construction Loan Agreement.
Even if we were to look to the definitions found within the Construction Finance Agreement, they do not necessarily render the Personal Guaranties unambiguous. First, Cat Financial points to the Construction Finance Agreement’s broad definition of “indebtedness” as indicating that the Personal Guaranties, when using the term “indebtedness,” also meant it broadly. However, “indebtedness” is defined in the Personal Guaranty as “all of Obligor’s indebtedness and/or obligations as stated above.” The “as stated above” language refers back to the ambiguous Section 1(a) of the Personal Guaranties which is the subject of this litigation. Additionally, “Obligations” is broadly, albeit confusingly, defined as well, but it remains unclear how this term is supposed to transfer over to the Personal Guaranties, especially in light of .the “Construction” section within the Personal Guaranties themselves.
It may very well be that the Personal Guaranties were meant to reach both of Chub Cay Club’s obligations to Cat Financial under the Equipment Loan and Construction Finance Agreements; however, because of the ambiguous language that could reasonably be interpreted two different ways, summary judgment was inappropriate to resolve this issue.

Reversed and remanded for further proceedings.

POLEN and HAZOURI, JJ., concur.