# Third District Court of Appeal

## State of Florida

Opinion filed September 10, 2014.

————————————

No. 3D12-3132
Lower Tribunal No. 03-24929

————————————

**Francis J. Dirico,**

Appellant,

vs.

**Redland Estates, Inc.,**

Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Greenberg Traurig, P.A., and Elliot H. Scherker, Brigid F. Cech Samole, and Jay A. Yagoda, for appellant.

David B. Haber, P.A., and David B. Haber and David T. Podein; The Law Office of Benedict P. Kuehne, P.A., and Benedict P. Kuehne, Susan Dmitrovsky, and Michael T. Davis, for appellee.

Before ROTHENBERG, SALTER, and LOGUE, JJ.

LOGUE, J.

## ON MOTION FOR REHEARING

The Appellee's motion for rehearing is granted in part. The opinion issued on May 7, 2014 is withdrawn and the following opinion is substituted in its place.

Francis J. Dirico ("Seller") appeals from a final judgment in favor of Redland Estates, Inc. ("Buyer") on a breach of contract action related to a failed contract between the parties for the sale of certain real estate. Seller asserts on appeal that the trial court erred in ruling the contract at issue ambiguous, and in admitting parol evidence to aid in its construction of the contract. For the reasons set forth below, we agree.

## FACTS AND PROCEDURAL BACKGROUND

On October 22, 2002, Seller and Buyer entered into a contract for the purchase and sale of a certain 92-acre property. The purchase price was $3.8 million dollars and the Contract required a $200,000 deposit. The Contract allowed for an additional 60-day extension on the 90-day due diligence period with the posting of an additional $38,000 non-refundable deposit. Before the closing date, Buyer took advantage of the 60-day extension and posted the additional $38,000 deposit by executing the first addendum to the Contract. The first addendum extended the closing date to April 20, 2003.

On April 22, 2003, the Seller and Buyer executed a second addendum to the contract. The second addendum extended the closing date to June 20, 2003. It also

2

increased the purchase price to $4.3 million. With respect to the deposit, the

second addendum states:

> The original deposit of $200,000.00 plus the additional deposit of $38,000 shall be release[d] and paid to the Seller as consideration for this extension. A non-refundable deposit of $250,000.00 shall [be] due upon the signing of this Addendum. The total non-refundable deposit held in escrow for this contract shall be $250,000.00.

The $238,000 in the escrow account was paid to Seller and Buyer provided the

new "non-refundable" deposit of $250,000 into the escrow account.

On June 20, 2003, the parties executed a third addendum. The third

addendum extended the closing date to October 20, 2003. It increased the purchase

price to $4.5 million. With respect to the deposit, the third addendum states:

> 2. An additional non-refundable deposit of $200,000.00 shall [be] due and payable in equal monthly payment of $50,000.00 beginning June 27, 2003 with subsequent payments due and payable on July 20, 2003, August 20, 2003, and September 20, 2003. All monthly deposit money shall be released and paid directly to the Seller, Francis J. Dirico. Any failure of the buyer to make timely payment of each additional required deposits shall be a default of the contract by the Buyer under paragraph 10 of the contract.
>
> 3. The non-refundable Deposit held by Turner & Lynn, P.A. as escrow agent, in the amount of $250,000.00 shall be released to the Seller immediately, as a payment for the extension of this contract.
>
> 4. All monthly deposit payments made shall be a credit due to the buyer at the time of closing.

Pursuant to this addendum, the $250,000 in "non-refundable deposit" that was previously held in escrow was paid to Seller. And Buyer duly made the additional $200,000 "non-refundable deposit" in monthly installments.

The closing was ultimately scheduled for October 15, 2003. Buyer prepared a closing statement that included credit for $688,000 in deposits. Seller prepared a closing statement that reflected credit for $200,000 in deposits. Buyer refused to close on the terms reflected in the Seller's proposed closing statement. Subsequently, Seller sent a default letter and retained the various payments and deposits; Buyer sued Seller.

Seller moved for summary judgment based on the language of the various addenda. Buyer countered that the contract language was ambiguous and that extrinsic evidence was needed to determine the intention of the parties. The court denied the Seller's motion for summary judgment. The trial court conducted a bench trial, during which testimony was taken with regard to the intent of the parties and their lawyers in drafting the addenda. The trial court entered an order finding Seller liable for breach of contract and entered a final judgment awarding $688,000 in deposits plus interest for a total award of approximately $1.3 million. The court also ordered Seller to transfer to Buyer and a real estate firm, jointly, the $95,000 commission under the contract. This appeal followed.

**ANALYSIS**

"The interpretation of a contract involves a pure question of law for which this court applies a *de novo* standard of review." Muniz v. Crystal Lake Project, LLC, 947 So. 2d 464, 469 (Fla. 3d DCA 2006). We begin with the longstanding principle that contracts "must be construed according to their plain language." St. Johns Inv. Mgmt. Co. v. Albaneze, 22 So. 3d 728, 731 (Fla. 1st DCA 2009). Ambiguity exists only when contractual language "is susceptible to more than one reasonable interpretation." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010). But "[a] true ambiguity does not exist [in a contract] merely because [the] contract can possibly be interpreted in more than one manner." BKD Twenty–One Mgmt. Co. v. Delsordo, 127 So. 3d 527, 530 (Fla. 4th DCA 2012). "[I]n the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." Real Estate Value Co., Inc. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA 2012) (citation omitted); see also Walgreen Co. v. Habitat Dev. Corp., 655 So. 2d 164, 165 (Fla. 3d DCA 1995) ("When a contract is clear and unambiguous, the court is not at liberty to give the contract any meaning beyond that expressed.") (citation and internal quotation omitted).

In denying Seller's motion for summary judgment, and in admitting parol evidence as to the intent of the parties to aid in construing the contract at trial, the

5

lower court believed that one reasonable interpretation of the contract was that the consideration given by the Buyer for the second and third extensions of time was not the money contained in the deposits, but instead the right of the Seller to personally hold and access the money prior to closing, rather than have the deposits held in escrow. After studying the language of the contract, we disagree. When the contract is read as a single document, there is no ambiguity on this point.

First, the addenda plainly state that the moneys previously held as deposits in escrow became payments to serve as consideration for the extensions of the contract to allow Buyer more time to close. The second addendum states that

> The original deposit of $200,000.00 plus the additional deposit of $38,000 shall be release[d] and paid to the Seller as consideration for this extension.

And the third addendum states that

> The non-refundable Deposit held by Turner & Lynn, P.A. as escrow agent, in the amount of $250,000.00 shall be released to the Seller immediately, as a payment for the extension of this contract.

"Payment" is "commonly defined as delivery and acceptance of money or its equivalent in discharge of an obligation." Enriquillo Export & Import, Inc. v. M.B.R. Indus, Inc., 733 So. 2d 1124, 1126 (Fla. 4th DCA 1999) (citation omitted). There is no reason why the expressions "release[d] and paid to the Seller as consideration for this extension" and "as a payment for the extension of this contract" should be given any meaning other than their plain and ordinary sense:

6

the funds that were once deposits to guarantee performance became payments for the extensions of the contract.

Second, consistent with this interpretation, the second and third addenda require Buyer to establish new deposits to guarantee performance. Arguably, there would be no need for additional deposits if the old deposits still served this function. The fact that new deposits are mandated suggests that the old deposits had become, in the language of the contracts, "payment[s] for the extension of this contract." In this regard, the second addendum states with respect to the deposit:

> A non-refundable deposit of $250,000.00 shall due upon the signing of this Addendum. The total non-refundable deposit held in escrow for this contract shall be $250,000.00.

The third addendum, at the same time it provides that this $250,000 non-refundable deposit became a "payment for the extension of this contract," also required a new deposit of $200,000 paid in four $50,000 monthly installments.

While these points are dispositive, we also note the following. The third addendum expressly provides that the new monthly deposits, even though "released and paid directly to Seller," rather than held in escrow, will serve as credits at closing. In this regard, the third addendum states "[a]ll monthly deposit payments made shall be a credit due to the buyer at the time of closing."

Thus, the contract provisions in the third addendum transferring the monthly deposits to the Seller contained express language that the monthly deposits would

still serve as credits at closing. Significantly, the contract provisions transferring the earlier deposits to the Seller as "payment" or "consideration" for the extensions contained no such language. We can only conclude that the deposits transferred to the Seller as "payment" or "consideration" for the extensions were not intended to serve as credits at closing. See Campbell v. Campbell, 489 So. 2d 774, 777 (Fla. 3d DCA 1986) ("Just as it is recognized that the same words used in two parts of an instrument are deemed to mean the same thing in both places, so, as in this case, the use of different language strongly implies that a different meaning was intended.") (internal citation omitted). There would be no reason to specifically identify only the monthly deposits transferred to Seller as credits at closing, if, as Buyer maintains, all deposits transferred to Seller, including the deposits that were paid for extensions, were intended to be credits.

Because there is no ambiguity in the contract, it was error to admit extrinsic evidence as to the parties' intent in executing the addenda. See Real Estate Value Co., Inc., 92 So. 3d at 260. Absent ambiguity, there were no genuine issues of material fact that precluded summary judgment here. See Pearson v. Caterpillar Fin. Servs. Corp., 60 So. 3d 1168, 1171 (Fla. 4th DCA 2011) ("If a contract's terms are clear and unambiguous, the language itself is the best evidence of the parties' intent and its plain meaning controls, warranting summary judgment.") (citation and internal quotation omitted). Given our interpretation of the

8

unambiguous contract provisions at issue, Seller was entitled to summary judgment in its favor.

**CONCLUSION**

For the reasons set forth above, we conclude that the contract language at issue here is unambiguous. The trial court erred in denying Seller's motion for summary judgment and in admitting extrinsic evidence to determine the intent of the parties. As such, this matter is reversed and remanded for entry of judgment in favor of Seller.[1]

Reversed and remanded.

---

[1] The portion of the judgment directing Seller to transfer the $95,000 commission to the real estate firm is similarly reversed.