# Third District Court of Appeal

## State of Florida

Opinion filed December 12, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2678
Lower Tribunal No. 12-41555
_____

## Michael Rosen,
Appellant,

vs.

## Harborside Suites, LLC,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rodney Smith, Judge.

Gunster, Angel A. Cortiñas, and Jonathan H. Kaskel, for appellant.

The Lehman Law Firm PLLC, and Gary E. Lehman; Nelson Mullins Broad and Cassel, Beverly A. Pohl, P.A, and Christina Lehm (Fort Lauderdale), for appellee.

Before LOGUE, LUCK, and LINDSEY, JJ.

PER CURIAM.

Was appellant Michael Rosen automatically released from his personal guaranty on a real estate development loan, or did the guaranty require a written

release before he was off the hook?  Because we agree with the trial court that the guaranty and loan agreements required a written release, and it was undisputed that the bank never issued one, we affirm summary judgment in favor of the bank's assignee, appellee Harborside Suites, LLC.

*Factual Background and Procedural History*

On September 30, 2005, Bahia Sun Associates, and several other related entities, of which Rosen was a principal, entered into a revolving mortgage note and construction loan agreement with Ohio Savings Bank/Amtrust in the principal amount of $41 million. The loan was for the development of a one hundred fifty eight unit condominium project in Hillsborough County.  Rosen personally guaranteed the loan in a separate unconditional and continuing guaranty and indemnity agreement.

The construction project was completed in June 2007, just when the nation was plunging into the 2008 recession which hit the real estate market in Florida especially hard. A majority of the purchasers defaulted.  By February 2008, only four contracts had closed. In May of that year, the bank declared a default on the loan due to nonpayment.

Ultimately, the bank was taken over by the FDIC. Prior to the takeover, the bank filed an action to foreclose the mortgage in Hillsborough County.[1] On June

---

[1]Rosen was not a party to the foreclosure action.

21, 2012, ITI Venture, the owner of the mortgage at the time, obtained a consent final judgment of foreclosure in its favor in the amount of $38,940,918.33, plus interest. Soon thereafter, ITI Venture assigned the foreclosure judgment to Harborside.

Harborside then filed this post-foreclosure action to enforce the guaranty against Rosen to recover the full amount due under the foreclosure judgment.[2] Harborside moved for summary judgment, which Rosen opposed. After a hearing, the trial court entered summary final judgment in favor of Harborside and against Rosen in the amount of $24,017,999.79, reserving jurisdiction to determine attorney's fees and costs at a later date. Upon the denial of his motion for rehearing of the judgment, Rosen appealed.

*Standard of Review*

"A trial court's interpretation of a contract is reviewed de novo. The same standard applies to the review of the entry of summary judgment." 19650 NE 18th Ave. LLC v. Presidential Estates Homeowners Ass'n, Inc., 103 So. 3d 191, 194 (Fla. 3d DCA 2012) (citation omitted).

*Discussion*

Rosen's principal argument below and before this court is that he was released from the guaranty – long before the foreclosure action was filed – when

---

[2]In its subsequent motion for summary judgment, Harborside claimed only the amount due and owing as of March 30, 2016.

he delivered one hundred twenty five pre-construction sales contracts to the bank on May 5, 2005.[3]  Rosen relies on this language from section 2.3 of the guaranty,

> Notwithstanding anything to the contrary contained herein, upon Borrower's satisfaction of the Pre-Sales Requirement in accordance with the terms and conditions of the Agreement, Guarantor shall thereafter be released from his obligations under this Guaranty with respect to matters occurring from and after the date of such release[,]

to argue that once he met the requirement to deliver the pre-sales contracts, he was automatically released from the personal guaranty.

Harborside responds that section 2.3 is not an automatic release and the bank never released Rosen from the unconditional guaranty.  The issue we must decide, then, is whether the guaranty automatically released Rosen when he delivered the pre-sales contracts, or whether the bank had to release Rosen in writing before the guaranty was extinguished.

As always with contracts, we construe them "according to their plain language," Dirico v. Redland Estates, Inc., 154 So. 3d 355, 357 (Fla. 3d DCA 2014) (quotations and citations omitted), "read[ing] provisions of a contract harmoniously in order to give effect to all portions thereof." City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000).  "In the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used

---

[3] Rosen also contends the trial court erred in failing to grant judgment on the pleadings on his affirmative defenses that the bank breached the loan agreement and failed to meet a condition precedent to enforcing the guaranty.  We affirm the trial court's order denying judgment on the pleadings without further discussion.

in the contract, without resort to extrinsic evidence." <u>Dirico</u>, 154 So. 3d at 357 (quotations omitted). Reading the various provisions of the guaranty together leads to the inescapable and unambiguous conclusion that a written release was necessary to discharge Rosen from his obligations under the contract.

1. The language of section 2.3 points to a written release. The use of the words "upon" and "thereafter" indicate a sequence of events rather than, as Rosen argues, a simultaneous and automatic occurrence. As written, the provision states "**upon** the Borrower's satisfaction of the Pre-Sales Requirement . . ., Guarantor shall **thereafter** be released from his obligations." The inclusion of both these words distinguishes this case from the one Rosen relied on for the proposition that an automatic release was intended. The release provision in <u>De Valk Lincoln Mercury, Inc. v. Ford Motor Co.</u>, 811 F. 2d 326, 330 (7th Cir. 1987), simply stated that "[u]pon [appellant's] demand … [appellee] shall be released." Unlike the release in this case, the word "thereafter" was not used in the <u>De Valk</u> release. For this reason, the <u>De Valk</u> court reasonably concluded that the release in that case occurred immediately upon the demand and required no subsequently executed writing. The inclusion of the word "thereafter" in the Rosen release suggests a two-step process.

2. Section 2.3 also says that Rosen would "thereafter be released from his obligations under this Guaranty with respect to matters occurring from and

after the date of **such release**." "[S]uch release" suggests that the release was a physical thing – an object – rather than an automatic state of being, as Rosen contends.

3.    The guaranty itself provided that a release from the guaranty must be in writing. Section 3.5 provided that, "No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom, or course of dealing, but solely by an instrument in writing duly executed by the parties hereto." Section 3.5 does not permit what Rosen has advocated here – that his conduct in delivering the pre-sales contracts automatically released him from the guaranty. Any release from the guaranty had to be in writing.

4.    The pre-sales requirement also shows that the release must be in writing. The loan agreement defined the pre-sales requirement as:

> Borrower's execution and delivery to Lender of a minimum of one hundred twenty five (125) valid, binding and then effective Approved Sales Contracts, certified by Borrower as being true, correct and complete, pursuant to which the total gross sales revenue payable to the Borrower from all such Approved Sales Contracts must equal or exceed $60,652,920.00.

An approved sales contract under the loan agreement:

> shall mean a valid, binding and effective arm's-length retail contract for the sale and purchase of a Condominium Unit, between the Borrower and a bona fide third-party purchaser of Condominium Unit for value, which purchaser is not affiliated with the Borrower, Guarantor or any Affiliate thereof (a "**Buyer**"). All Approved Sales Contracts shall (i) **be on terms and conditions, and in form and substance, reasonably satisfactory to the Lender**; (ii) prohibit

6

assignment; (iii) contain no rescission rights or contingencies that would enable either party thereto to terminate the contract (other than Borrower's right to terminate such contract for failure to satisfy the Pre-Sales Requirement), (iv) are in good standing and free from default, (v) meet the requirements of the Interstate Land Sales Act as of the date of execution of such contract and as of the date such contract is presented to Lender, **as demonstrated by Borrower to Lender's Satisfaction, in Lender's sole and absolute discretion**, and (vi) provide for a nonrefundable cash downpayment or Deposit . . . .

(emphasis added). In other words, to meet the pre-sales requirement, Rosen had to deliver one hundred twenty five approved contracts. And to be approved contracts, the bank had to find their terms, conditions, form, and substance reasonably satisfactory, and the bank had to be satisfied that the pre-sales contracts met the requirements of the federal land sales act.

Delivering the contracts was not enough to trigger the pre-sales requirement. The contracts had to be approved ones, and this required the bank to take the extra step to be satisfied that the contracts met the stringent requirements of the loan agreement. Delivery of the one hundred twenty five contracts, alone, could not automatically release Rosen from the guaranty, as he argues, because the bank had a critical and contractually-mandated role in deciding whether certain condition were met.

Rosen responds that we must ignore the requirement of a written release in section 3.5 of the guaranty, and the bank's role in approving the pre-sales contracts in the loan agreement, because section 2.3 says it is "[n]othwithstanding anything

7

to the contrary contained herein," so we should only be looking at the language of section 2.3. But the notwithstanding clause directs only that we disregard contrary provisions that are "**contained herein**," that is, contained within the guaranty. The requirement that the bank approve the pre-sales contracts in its sole and absolute discretion is not contained in the guaranty. It is in the separate loan agreement.

Also, none of the other provisions in the loan agreement and guaranty are "to the contrary" of section 2.3. Indeed, they are complimentary. As we discussed above, section 2.3 contemplates a subsequent release after the pre-sales requirement has been met; the loan agreement gives the bank a role in determining that the contracts are satisfactory; and section 3.5 of the guaranty sets out how the release is to be communicated to Rosen (in writing). These provisions work hand-in-hand to insure that the strict requirements of the loan agreement have been met before Rosen is released from his guaranty.

## *Conclusion*

The evidence was undisputed that the bank did not release Rosen in writing from his personal guaranty. Because a written release was required by the guaranty and loan agreements, we affirm the trial court's summary judgment in favor of Harborside on its claim seeking to enforce the guaranty against Rosen.

Affirmed.