# Third District Court of Appeal
## State of Florida

Opinion filed May 15, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-0806
Lower Tribunal No. 19-31658
_____

## Grove Harbour Marina and Caribbean Marketplace, LLC, etc.,
Appellant,

vs.

## Grove Bay Investment Group, LLC, etc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

The Ferraro Law Firm, P.A., and Leslie B. Rothenberg and Mathew D. Gutierrez; Boies Schiller Flexner LLP, and Jesse Panuccio (Fort Lauderdale), for appellant.

Shubin & Bass, P.A., and Jeffrey S. Bass, Deana D. Falce and Whitney A. Kouvaris, for appellee.

Before FERNANDEZ, MILLER and BOKOR, JJ.

BOKOR, J.

## ON MOTION FOR REHEARING

We deny both parties' respective motions for rehearing or clarification but withdraw our previous opinion and substitute the following opinion in its stead.

In this contract interpretation case involving a public-private partnership, appellant Grove Harbour challenges a grant of summary judgment finding that appellee Grove Bay was entitled, pursuant to various land development contracts, to construct and maintain improvements to a public roadway on Grove Harbour's property. Grove Harbour contends that genuine issues of material fact as to the terms and authorization of the improvements precluded summary judgment, as well as that the trial court improperly rejected several of its affirmative defenses alleging repudiation, failure of consideration, and fraud in the inducement. For the reasons explained below, we reverse and remand the entry of summary judgment and the denial of Grove Harbour's fraud defenses, but we affirm as to the denial of the other affirmative defenses.

## BACKGROUND

Grove Harbour and Grove Bay currently both maintain adjacent properties abutting Biscayne Bay in the Coconut Grove neighborhood of the City of Miami. Grove Harbour is the lessee of 2640 South Bayshore Drive,

from which it currently operates a marina and boat launch. Grove Bay is the lessee of 3385 & 3349 Pan American Drive and 3351 & 3377 Charthouse Drive. The properties are divided by Charthouse Drive, a public roadway of the City of Miami.

In January 2013, the City began soliciting proposals for a public-private partnership to redevelop the waterfront area and operate various attractions including a marina and boat launch. Grove Bay, seeking to prepare a development proposal, approached Grove Harbour to devise a partnership whereby visitors to Grove Bay's property would be allowed to transport and launch boats stored on Grove Bay's property through Grove Harbour's marina. In furtherance of this partnership, Grove Bay and Grove Harbour executed several contracts providing for Grove Bay to undertake improvements to Charthouse Drive and the Grove Harbour property to improve traffic circulation and boat launch capacity in the event Grove Bay was awarded development rights. The City ultimately accepted Grove Bay's development proposal and leased the property to Grove Bay.

The parties' transactions encompass numerous agreements executed over several years. The ones pertinent to this appeal are as follows:

**a. The Access Agreement**

3

The "Access Agreement," executed May 9, 2013, was the first agreement executed between Grove Bay and Grove Harbour prior to the submission of Grove Bay's development proposal. This agreement would provide Grove Bay a right of access over portions of Grove Harbour's property in the event the City accepted Grove Bay's development proposal and executed a lease:

> At the execution of the Grove Bay Lease by the City and Grove Bay, Grove Harbour hereby grants to Grove Bay non-exclusive vehicular, vessel and pedestrian access in, over, upon, across and through that portion of the Grove Harbour property identified as the "**Access Area**" on Exhibit A attached hereto and made a part hereof (the "**Access Area**") for vehicular, vessel and pedestrian ingress and egress to and from the Grove Bay property solely for the hauling and dropping of vessels.

As consideration for these access rights, Grove Bay was to pay Grove Harbour an "Access Fee" of $200,000 annually, in monthly installments of $16,666.66, commencing on the first day of the month following the earlier of either "actual use of the Access Area by Grove Bay" or "receipt of the final permit of certificate of use for the improvements to the Access Area." The "Access Area" exhibit attached to this agreement consisted solely of two graphics depicting an aerial view of portions of the Grove Harbour property and Charthouse Drive after the proposed improvements.

**b. "The Harbour" Development Proposal**

4

Grove Bay's development proposal for the waterfront area, entitled "The Harbour," references the Access Agreement and Grove Bay's relationship with Grove Harbour as a means of regulating traffic and boat launches by utilizing Grove Harbour's property. The proposal included plans for two additional boat launch and staging areas on Grove Harbour's property, as well as proposed traffic circulation improvements including the realignment of Charthouse Drive and the addition of a roundabout on Grove Harbour's property. As with the Access Agreement, the precise Charthouse Drive improvements were not described, but rather defined solely by graphics depicting the same improvements as the Access Area. The proposal also included a graphic depicting an alternative plan for "a transition, if ever needed, to return of [sic] boat launching function on-site."

### c. Grove Bay Lease

Upon accepting Grove Bay's development proposal, on October 24, 2013, Grove Bay and the City entered into a 50-year lease for the Grove Bay properties. The lease incorporates the development proposal and requires Grove Bay to operate the land "as contemplated in the Proposal," including construction of the improvements and additional boat launches on Grove Harbour's property. The lease also provides that "should the additional boat launches located at Grove Harbour (as described in the Proposal) not be

5

available for use . . . Lessee shall construct the on-site boat launch as depicted in the Proposal."

### d. Access Easement and Indemnification Agreement

In order to effectuate the lease, in 2016, Grove Bay, Grove Harbour, and the City jointly executed an "Access Easement and Indemnification Agreement" (hereinafter "AEIA") concerning the Charthouse Drive improvements. This agreement provides that Grove Harbour approves of the "Charthouse Drive Plans" as defined by an exhibit attached to the AEIA:

> Grove Harbour has reviewed the plans and specifications for the improvement and re-alignment of Charthouse Drive as proposed by Grove Bay. A copy of the plans and specifications are attached hereto as Exhibit B (the "Charthouse Drive Plans"). By its execution hereof, Grove Harbour approves the Charthouse Drive Plans, as such may be modified to comply with the requirements, permits and approvals of appropriate governmental or quasi-governmental authorities including, without limitation, the City.

The AEIA also gives Grove Bay the right to construct and maintain the improvements depicted in the Charthouse Drive Plans, and grants Grove Bay a non-exclusive easement over a specified "Easement Area" that includes "such portions of Charthouse Drive as depicted on the Charthouse Drive Plans . . . at such time as it is developed or redeveloped." The "Charthouse Drive Plans" attached to the AEIA also consist of a single image

depicting the proposed modifications including the roadway realignment with the new roundabout.[1]

### e. AEIA "Side Agreement"

After execution of the AEIA, Grove Bay and Grove Harbour executed an additional agreement (titled "Agreement," but referred to as a "Side Agreement" by the parties) to clarify their respective obligations under the AEIA. This agreement expressly states that it is intended solely to clarify the AEIA and "is not an alteration, variation, or modification" of the AEIA, such that joinder of the City was not required. The agreement provides that Grove Harbour approves the "Plans and Specifications" for the Charthouse Drive improvements, as defined by reference to an exhibit depicting a more detailed portrayal of the portions of the road to be realigned, including the roundabout on Grove Harbour's property.[2]

---

[1] Grove Harbour argues that because the AEIA also defines the term "Charthouse Drive" by reference to a metes-and-bounds description of the current layout of the road before any improvements, we should interpret the AEIA and incorporated agreements to allow Grove Bay to only construct improvements within Charthouse Drive itself, and not on Grove Harbour's leasehold. Because the AEIA plainly distinguishes between the extant "Charthouse Drive" and the prospective "Charthouse Drive Plans" accepted by Grove Harbour, and because the Easement and Access areas also encompass Charthouse Drive after any redevelopment, we reject this interpretation.

[2] In addition to the foregoing, in 2015, Grove Bay also retained the architectural firm Arquitectonica to prepare design plans for the improvements required in the Harbour development. These plans included

7

## f. Grove Bay Files Suit

Throughout 2017, the parties' relationship began to deteriorate. Most notably, Grove Harbour Marine Partner, LLC, a subsidiary company of Grove Harbour that had been administering the properties under a separate management agreement, ceased its operations in June 2017 after the parties allowed the management agreement with Grove Bay to lapse, allegedly unbeknownst to Grove Harbour. Grove Harbour accused Grove Bay of breaching or repudiating the Access Agreement by allowing this lapse, claiming that Grove Harbour had been assured that it or an affiliate would continue to maintain the redeveloped marina throughout the duration of the lease. In response, Grove Bay notified Grove Harbour that it would modify its development plans to transition to on-site boat launches as described in the Grove Bay Lease, but that it still intended to enforce the other agreements and proceed with the Charthouse Drive realignment on portions of the Grove Harbour property, with no need for joint operations and management.

---

more detailed renditions of the Charthouse Drive improvements depicted in the development proposal, including the new roundabout on the Grove Harbour property. However, as these plans were not approved by Grove Harbour or incorporated into any agreement authorizing construction of improvements, they are irrelevant to this appeal.

After Grove Harbour refused to allow Grove Bay to begin construction, Grove Bay initiated the underlying suit, seeking declaratory and injunctive relief and specific performance to enforce the AEIA. Grove Harbour counterclaimed, seeking to enjoin Grove Bay from trespassing or proceeding with the Charthouse Drive modifications on the basis that Grove Bay's change to on-site boat launches negated the need for the roadway modifications for the hauling and dropping of vessels and thus repudiated the Access Agreement. Grove Harbour also asserted affirmative defenses including repudiation and failure of consideration for the Access Agreement, and fraud in the inducement for the AEIA. Upon cross-motions for summary judgment, the trial court rejected Grove Harbour's affirmative defenses and granted summary judgment and an injunction in favor of Grove Bay, finding that the parties' agreements unambiguously allowed Grove Bay to construct the Charthouse Drive improvements on Grove Harbour's property regardless of whether Grove Harbour allowed the launching of boats from its property, and that Grove Bay had not breached its obligations under the Access Agreement. This appeal followed.

## STANDARD OF REVIEW

"The standard of review on orders granting final summary judgment is *de novo.*" Orozco v. McCormick 105, LLC, 276 So. 3d 932, 935 (Fla. 3d

9

DCA 2019).  On review of a motion for summary judgment, we take all facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.  See, e.g., id.; Cascar, LLC v. City of Coral Gables, 274 So. 3d 1231, 1234 (Fla. 3d DCA 2019).  To be entitled to summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fla. R. Civ. P. 1.510(a).  A dispute of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, and a factual dispute is "material" when it could have some impact on the outcome of the case under the applicable substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

As the judgment here was rendered before May 1, 2021, we apply the previous summary judgment standard the supreme court receded from in In re Amendments to Florida Rule of Civil Procedure 1.510, 309 So. 3d 192 (Fla. 2020).  Under this standard, "the burden of proving the absence of a genuine issue of material fact is upon the moving party," and summary judgment should be granted "[o]nly after it has been conclusively shown that the party moved against cannot offer proof to support his position on the genuine and material issues in the cause."  Holl v. Talcott, 191 So. 2d 40, 43, 47 (Fla. 1966).  "If the evidence raises any issue of material fact, if it is

10

conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So. 2d 666, 668 (Fla. 1985).

**ANALYSIS**

**I. Summary Judgment**

The ambiguity in the AEIA, which is the only agreement between Grove Bay, Grove Harbour, and the City that actually authorizes improvements to Charthouse Drive, should have precluded summary judgment. The AEIA failed to provide the requisite clarity as to the exact nature of the improvements to be made on Grove Harbour's property. Of course, where a contract's terms are clear and unambiguous, the court looks no further than the plain meaning of the language used in the contract as the best expression of the parties' intent. See, e.g., Pearson v. Caterpillar Fin. Servs. Corp., 60 So. 3d 1168, 1171 (Fla. 4th DCA 2011). Under that circumstance, summary judgment is often appropriate. However, "[w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties." Bacardi v. Bacardi, 386 So. 2d 1201, 1203 (Fla. 3d DCA 1980); see also Haggin v. Allstate Invs., Inc., 264 So. 3d 951, 954 (Fla. 4th DCA 2019) ("As a general

11

rule, only if the contract is ambiguous will the parties' intent become a question of fact for the fact-finder, precluding summary judgment. However, if the agreement is unambiguous, then the plain language of the contract governs and there is no need for parol evidence of the parties' intent." (quotations and citations omitted)); Holmes v. Fla. A & M Univ., 260 So. 3d 400, 403–04 (Fla. 1st DCA 2018) ("[T]he existence of an ambiguity in a contract precludes the entry of summary judgment.").

"A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting interests." Real Estate Value Co. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA 2012) (citation omitted); see also Com. Cap. Res., LLC v. Giovannetti, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007) ("Where a contract is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous."). Here, while the AEIA allows Grove Bay to construct improvements to Charthouse Drive on Grove Harbour's property in some capacity, this agreement doesn't provide the requisite clear and unambiguous expression of the scope and location of those improvements. The "Charthouse Drive Plans" incorporated into the AEIA depict only the original version of the proposed roadway improvements with boats being launched from Grove Harbour's property, not the alternative

plan Grove Bay submitted in the event it was required to change to on-site boat launching, as it has now done. The Side Agreement offers no clarification on this point, nor could it be construed to authorize any construction beyond the scope of the AEIA, particularly without the City being a party to that agreement. Moreover, while the Access Agreement does incorporate the alternative plans for the Charthouse Drive realignment as depicted in the development proposal, the Access Agreement itself does not confer construction rights, it is not expressly incorporated into the AEIA or required by the Lease, and its defined Access Area is broader than the AEIA's Charthouse Drive Plans. We are left with exhibits setting forth the alternative modifications that consist solely of a single, grainy image, with no written description. While the City has expressly approved the alternative development plans through the Grove Bay Lease, Grove Harbour has only approved the original versions defined in the AEIA as the "Charthouse Drive Plans," and it is unclear whether the change to alternative plans would amount to the sort of "modification" Grove Harbour has also approved under the AEIA. Thus, extrinsic evidence is necessary to determine the extent to which the alternative development plans were contemplated in the AEIA and Side Agreement or whether Grove Harbour has approved of these alternative plans as provided for in those agreements, as well as the precise

13

terms of the improvements themselves.[3]  Accordingly, with this lack of clarity

on what constitutes the improvements, we reverse and remand the summary

judgment to allow these issues to be further developed.

## II. Affirmative Defenses

On remand, we also find that while the trial court correctly granted

summary judgment on Grove Harbour's repudiation and failure of

consideration defenses, the trial court erred in granting summary judgment

on the affirmative defenses based on fraud in the inducement.  The basis for

the former two defenses flows from Grove Bay's purported failure to pay the

access fee for its use of Grove Harbour's property as required under the

Access Agreement.  However, as noted, the Access Area encompasses the

redeveloped Charthouse Drive, and the access fee becomes due only the

following month after either "actual use of the Access Area by Grove Bay" or

"receipt of the final permit of certificate of use for the improvements to the

Access Area," so the Access Agreement has not been breached or

repudiated solely by Grove Bay's switching to on-site boat launches.  Thus,

---

[3] To this court's knowledge, no document incorporated into the AEIA contains a precise, written description of the precise square footage of the improvements themselves, including the number of docks to be built at the marina.  We cannot conclude that the agreements here, which effectively authorize both construction and easements solely by reference to images, are sufficiently clear and unambiguous for summary judgment to be appropriate.

14

as Grove Bay has not even begun construction of the improvements yet, nor has Grove Bay expressed a clear and unequivocal intent to repudiate the Access Agreement or refuse to pay the access fees once they become due, Grove Harbour cannot claim repudiation or failure of consideration for these reasons.[4]

However, as for Grove Harbour's fraud in the inducement defenses, genuine issues of material fact remain outstanding as to whether Grove Bay made any false representations during formation of the AEIA and Side Agreement that could support such defenses.

> To state a claim for fraud in the inducement, a plaintiff must allege (1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation.

Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So. 2d 204, 209 (Fla. 3d DCA 2003); see also Burton v. Linotype Co., 556 So. 2d 1126, 1128 (Fla.

---

[4] See, e.g., Torbron v. Campen, 579 So. 2d 165, 168 (Fla. 5th DCA 1991) ("Failure of consideration is an affirmative defense and is the neglect, refusal, or failure of one of the parties to perform or furnish the consideration agreed upon."); Mori v. Matsushita Elec. Corp. of Am., 380 So. 2d 461, 463 (Fla. 3d DCA 1980) ("A prospective breach of the contract occurs when there is absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract. Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute.").

15

3d DCA 1989) ("Fraud is ordinarily inappropriate for summary disposition; only after a full explanation of the facts and circumstances can the occurrence of fraud be determined.").

Grove Harbour claims that Grove Bay made various false representations to induce Grove Harbour to sign the AEIA, including assuring Grove Harbour that the Access Agreement would remain in effect and that Grove Harbour or an affiliate company would be able to continue managing the joint marina despite Grove Bay's intention to repudiate the Access Agreement by allowing the management agreement with Grove Harbour Marine Partner to lapse and switching to on-site boat launching. Conversely, Grove Bay claims that Grove Harbour was aware of the lapse of the management agreement prior to signing the AEIA and that Grove Harbour itself threatened to revoke its access to the property without additional safeguards, which was what led to the Side Agreement. As these differing accounts cannot be reconciled from the face of the record, unresolved issues of fact remain as to when Grove Harbour became aware of the lapse of the management agreement and the extent to which Grove Bay made representations about its intent for joint marina operation that may have been relied upon by Grove Harbour during formation of the AEIA, as well as the extent to which Grove Bay may have had any duty with respect

16

to disclosures.  Because these issues of fact are genuine and material to Grove Harbour's putative fraud defenses, summary judgment should not have been granted as to the affirmative defenses predicated on this theory.

Affirmed in part, reversed in part, and remanded.