386 So.2d 1201 (1980)
Luis Facundo BACARDI, Appellant,
v.
Adriana C. BACARDI, Appellee.
No. 80-733.
District Court of Appeal of Florida, Third District.
July 29, 1980.
Rehearing Denied September 4, 1980.
*1202 Roger D. Haagenson, Ft. Lauderdale, for appellant.
Nard S. Helman, Miami, for appellee.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
In August 1979, the parties entered into a Property Settlement Agreement which provided, in pertinent part:
"It is further agreed and understood between the parties that the Wife shall become responsible for any and all mortgage payments, taxes, insurance payments, assessments, or debts of any kind on said residence at the time of the dissolution of marriage. In the event the Wife fails to make payment of same, then the Husband shall make payment in her behalf and deduct said sum from the alimony he may be required to pay under this Agreement. That this payment by the Husband is voluntary on his part and shall be at his option. Husband shall continue to be obligated to pay all the obligations of the parties, until the time of a dissolution of marriage." (emphasis supplied).
Shortly thereafter, Adriana filed a petition for dissolution and, in December, a motion asking the court to find Luis in contempt for failing to live up to his agreement to "pay all the obligations of the parties, until the time of a dissolution of marriage." Adriana contended that this clause of the agreement required the husband to pay all expenses of her support and maintenance to the time of dissolution; Luis contended that his agreement to pay "obligations of the parties" meant that he was to pay only joint undertakings or liabilities, such as mortgage payments, taxes and the like. The trial court ordered Luis to pay all of Adriana's living expenses incurred from the time of the agreement to date, the sum of $26,450.[1]
As is often the case, both parties argue that the contested language of the agreement is clear  Adriana says it clearly entitles her to all of her expenses and Luis says it clearly does not. In support of her position Adriana points out that the agreement contains no other interim support or alimony provision and that the intention of the parties that support and maintenance be covered by this clause is evident.[2] Luis responds that if the parties meant expenses, that is what they would have said; and that the entire paragraph referring, as it does, to "mortgage payments, taxes, insurance payments, assessments, or debts of any kind on said residence" obviously illustrates what is meant by "obligations."
We are unable to agree with the trial court that the agreement between the parties clearly and unambiguously entitled the wife to recover all of her expenses from the time of the agreement to the time of the *1203 dissolution of the marriage. It may be that that is what the parties intended, but we cannot discern that intent from the language used. See Sosnowitz v. Sosnowitz, 342 So.2d 524 (Fla. 3d DCA 1977). Nor does a reading of the entire agreement clarify what the parties meant when they said that the husband shall pay all the obligations of the parties. See Davis v. Davis, 301 So.2d 154 (Fla. 3d DCA 1974).
Provisions of a property settlement agreement are interpreted by courts like any other contract. Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); Sosnowitz v. Sosnowitz, supra; Davis v. Davis, supra. When a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties. Griffin Builders Supply, Inc. v. Jones, 384 So.2d 265 (Fla. 2d DCA 1980); MacKenzie v. Avis Rent-A-Car Systems, 369 So.2d 647 (Fla. 3d DCA 1979). No such evidence was heard by the general master or trial court in the present case. Instead, the order appealed from was necessarily based upon a conclusion that the language of the agreement required the husband to pay all expenses of the wife to the time of dissolution.[3] While that conclusion may prove to be correct, it cannot arise from the ambiguous language of the agreement. Accordingly, we reverse and remand with instructions to the trial court to conduct an evidentiary hearing to determine what the parties intended when they agreed that the "husband shall continue to be obligated to pay all the obligations of the parties until the time of the dissolution of the marriage."[4]
The wife's motion for attorneys' fees for services rendered on this appeal is hereby remanded to the lower court for determination and assessment at the conclusion of the further proceedings required by this opinion. See Fla.R.App.P. 9.400(b); Anderson v. Anderson, 180 So.2d 360, 363 (Fla. 3d DCA 1965).
Reversed and remanded.
NOTES
[1] The court simply approved a report of a general master to whom it had referred the matter. The general master recommended that each and every expense incurred by the wife from September 24, 1979, through February 26, 1980, be paid by the husband. He categorized the expenses as being related to the "upkeep and maintenance of the house and the Petitioner [Adriana]."
[2] The husband could make an equally plausible argument that having agreed, in a separate clause, to pay $2,000 per month alimony after dissolution, he did not undertake to give Adriana carte blanche to incur expenses beyond that in the interim.
[3] The proposition that where a contract is ambiguously worded, the construction placed on the language by the trial court is presumed correct, Clark v. Clark, 79 So.2d 426 (Fla. 1955), is applicable only where the trial court has received and evaluated evidence bearing upon the intent of the parties. The trial court's conclusion in the present case that the agreement is unambiguous is a legal conclusion and is not entitled to a presumption of correctness. In re Estate of Donner, 364 So.2d 742 (Fla. 3d DCA 1978). See also Adams v. Adams, 385 So.2d 688 (Fla. 3d DCA 1980).
[4] In light of our disposition of the case, we do not reach the parties' second issue concerning whether contempt proceedings are applicable to the husband's failure to pay these moneys to the wife. If the clause in dispute is later shown to be one providing for alimony, as distinguished from a contractual obligation to convey property, then contempt could lie to enforce it. Murphy v. Murphy, 370 So.2d 403 (Fla. 3d DCA 1979); Howell v. Howell, 207 So.2d 507 (Fla. 2d DCA 1968).