585 So.2d 1005 (1991)
Barbara E. FECTEAU and Edward Fecteau, Appellants,
v.
SOUTHEAST BANK, N.A. and Jody Grier, As Co-Personal Representatives of the Estate of Robert W. Grier, Appellees.
No. 90-1584.
District Court of Appeal of Florida, Fourth District.
August 21, 1991.
*1006 Joseph S. Karp and Pamela Lund of Joseph S. Karp, P.A., West Palm Beach, for appellants.
Mark P. Gagnon and John Jorgensen of Scott, Royce, Harris, Bryan & Hyland P.A., Palm Beach Gardens, for appellees.
HERSEY, Judge.
This is an appeal from a summary judgment terminating appellants' right of exclusive possession. The issue is whether there is a genuine question of material fact as to whether that right was an incident of support or whether it was part of a settlement of property rights. Subsidiary issues are whether the underlying agreement is ambiguous requiring a relaxation of the parole evidence rule and, in turn, the applicability of the Deadman's statute, section 90.602, Florida Statutes (1988).
Appellant, Barbara Grier Fecteau, and her then-husband, Robert W. Grier, entered into a written agreement in 1968 as part of dissolution proceedings. Paragraph four of that agreement, titled "House for Wife," provided:
Husband hereby agrees to furnish to Wife a house to be mutually selected by the Husband and Wife, the exclusive use and occupancy of said house to be in the Wife so long as the terms and conditions of this Agreement are fully complied with. Wife agrees to execute any and all documents necessary for the purchase of said house, provided, however, Husband agrees to save and hold harmless the Wife from any obligations incurred by said signing. Husband further agrees to make all payments for the purchase of said house, as well as payments for taxes, fire insurance and other coverage as may be required by a lending institution regarding the purchase of said house. Wife agrees to maintain said house in as good condition, ordinary wear and tear excepted, as said house shall be in at the time of purchase.
In 1969 the agreement was modified to provide that Grier would build a house for appellant on a lot he owned. He did in fact build the house and appellant moved in with her new husband, co-appellant Edward Fecteau. Robert Grier died in 1980. Nine years later the personal representatives of his estate paid off the mortgage on the property and filed suit to oust appellants from possession. The complaint alleged that appellants' right to possession was an incident of support which terminated upon the death of Robert Grier. Appellees sought possession in Count I and in Count II sought a declaratory judgment as to their rights in the property. They thereafter moved for summary judgment on Count II. The trial court, determining that the agreement was not ambiguous and that the paragraph in question was clearly a support obligation which terminated upon the death of Robert W. Grier, entered summary judgment for appellees.
As indicated earlier, the issue which is presented for our determination is whether, on this record, a genuine issue of material fact remains as to whether paragraph four of the "Separation and Property Settlement Agreement" constitutes satisfaction of a support obligation, as the trial court held it "clearly" did, or whether it was part of the property settlement aspect of the agreement.
The only provision of the original agreement which specifically deals with support payments is paragraph six. It requires a weekly payment of $100.00 to the wife from the husband for a period of one year. Interestingly, the parties include language that the husband will make such payments "realizing that there is no legal obligation upon the husband to do so... ." This is at least some indication that, for whatever reason, the parties recognized that the husband had no obligation to continue to support the wife.
It is also interesting to note that custody of the children is given to the husband, rather than to the wife, so any provision to furnish shelter is unlikely to relate to child support. In the paragraph immediately preceding the agreement of the husband to provide a house for the wife, the latter relinquishes all claims to the marital abode and to all of the real estate and other corporate interests owned by the husband. *1007 The very strong inference which arises from the relationship of these provisions, one to the other, is that the husband agreed to furnish a house for the wife in exchange for relinquishment by wife of her interests, if any, in husband's business ventures and the marital abode. This is reinforced by the absence of child support obligations and the parties' apparent recognition of lack of any spousal support obligation.
Further support for this line of reasoning emerges from examination of the circumstances existing at the time the parties modified the original agreement in September of 1969. The modification required that, rather than purchase a house for appellant, the former husband would build one for her on a lot he owned (or would shortly acquire). The fact is that at the time of this modification (as evidenced by her new name) the former wife, appellant, already had remarried. Certainly the former husband, appellees' predecessor in title, had no continuing obligation of support at that time, particularly in view of the lack of any child custody support-related obligation. One possible and logical explanation is that the former husband was fulfilling the property settlement aspect of the original agreement in consideration of the former wife's continued performance of the obligations imposed upon her in regard to the former husband's business interests.
Finally, there is the fact that the former husband did in fact construct a house on the lot he owned, title to which he retained, and the fact that the former wife and her new husband took possession and lived in the house for the remainder of the former husband's life (and continue to do so).
A separation agreement is a contract subject to interpretation like any other contract. Bingemann v. Bingemann, 551 So.2d 1228, 1231 (Fla. 1st DCA 1989), rev. denied, 560 So.2d 232 (Fla. 1990).
Where the terms are unambiguous, the parties' intent must be discerned from the four corners of the document. Robert C. Roy Agency, Inc. v. Sun First Nat'l Bank, 468 So.2d 399, 405 (Fla. 4th DCA), rev. denied, 480 So.2d 1295 (Fla. 1985). "[W]here a contract is clear and unambiguous in its terms the court may not give those terms any meaning beyond that expressed." Biltmore Sys., Inc. v. Mai Kai, Inc., 413 So.2d 458 (Fla. 4th DCA 1982). In the absence of ambiguity, the language itself is the best evidence of the parties' intent and its plain meaning controls. Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA), rev. denied, 548 So.2d 662 (Fla. 1989).
On the other hand, "[w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties." Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980). When there are two reasonable interpretations, summary judgment is inappropriate because there is a genuine issue of material fact. Gulfstream Bank, N.A. v. Barnett Bank of South Florida, N.A., 438 So.2d 67 (Fla. 4th DCA 1983); Quayside Assocs., Inc. v. Harbour Club Villas Condominium Ass'n, Inc., 419 So.2d 678, 679 (Fla. 3d DCA 1982) ("[w]here ... the terms of a written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment.").
Appellees allege that the contract is clear and has only one true meaning, and that the court would have to violate the intent of the contract to create an ambiguity. We disagree. There was more than one reasonable interpretation of the agreement here, as we have indicated. The court erred in resolving this issue by summary judgment. See Royal Am. Realty v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968) (where language appears unambiguous but is susceptible of more than one reasonable interpretation, language is rendered ambiguous).
We are not at all impressed with the following arguments by appellees which we treat here to afford a measure of guidance *1008 to the trial court upon remand. Appellees state the rule that support obligations terminate upon the death of the paying former spouse. O'Malley v. Pan Am. Bank, 384 So.2d 1258 (Fla. 1980). True enough, but the very problem here is that there is no language stating that possession is to cease upon Grier's death, and there is no language indicating clearly that this is to be a support obligation. Thus this rule is of no use in determining whether this was in fact a support obligation that ceased upon Grier's death.
Appellees attempt to convince the court that the home was a support obligation because "when a husband is required to pay the mortgage, taxes and insurance for a home provided to the wife without receiving credit against the spouse, it may be considered a form of alimony." Appellees have taken this proposition out of context. It applies where a former spouse makes these payments on jointly owned property such as the marital home, when he is no longer living there. The "credit" appellees mention is clear evidence of this: it is a credit against the proceeds from the sale of joint property, arising from what the out-of-possession spouse has paid. See Heldmyer v. Heldmyer, 509 So.2d 1310, 1312 (Fla. 5th DCA 1987); see also Pastore v. Pastore, 497 So.2d 635 (Fla. 1986) (trial court explicitly designated marital home a support award, so issue of credit for payments arose). Obviously, this is not applicable to the instant case. The house in question was not the marital home and it was owned solely by the former husband. Thus, this argument does not support the proposition that the house was a form of alimony or other support.
Similarly, Cannon v. Morris, 407 So.2d 372 (Fla. 1st DCA 1981), and the case upon which it relies, Horn v. Horn, 398 So.2d 935 (Fla. 3d DCA 1981), can be distinguished from the instant case. In both of those cases, the former wife had the marital home as an incident of child support. Here, of course, the former husband received the marital home and custody of the children under the agreement. Therefore, while appellees are correct that a marital home often is awarded as an incident of support, that clearly is not what happened here.
True property settlement agreements cannot be modified. Shaw v. Shaw, 448 So.2d 631 (Fla. 4th DCA 1984). Appellees argue that paragraph four had to be a support obligation because it specifically provided that the arrangement could be modified. This is simply incorrect. Paragraph four actually states that Fecteau's right can be cut short if at any time she fails to comply with the terms of the agreement. This is quite different from a provision (express or implied by law) in alimony or support agreements providing that upon the occurrence of a change in conditions (e.g., change of economic circumstances or remarriage of the supported former spouse), the parties may seek to make a change in the terms of the agreement. Appellees' cases demonstrating that if an obligation can be modified it must be a support rather than property obligation, are therefore irrelevant.
In fact, as appellants point out, this termination provision is consistent with the creation of a life estate to use and enjoyment of the house subject to a condition subsequent or a determinable fee; stated somewhat differently, it is a reasonable interpretation of this clause that the parties intended to create in the former wife a property interest for her lifetime that would terminate only if she failed to care for the property or otherwise comply with the agreement. See 22 Fla.Jur.2d Estates, Powers, and Restraints §§ 17, 23, 29, 76 (1980).
There is no other language in paragraph four that would support the idea that the obligation is modifiable. Thus there is at least a genuine issue of material fact as to whether paragraph four was in fact a property settlement provision (if in fact it does not establish the issue in appellants' favor as a matter of law altogether).
Appellees argue that the court would have to remake the contract between Fecteau and Grier and write in a provision binding Grier's estate in order to find for the Fecteaus here. We disagree. True, a *1009 court cannot relieve Fecteau of the hardships of an improvident bargain and if she did not bargain for the obligation to survive Grier's death the court cannot change it for her, but this only begs the question, "what was the bargain?" The mere absence of a term binding the estate, by itself, does not mean there was no intention that Fecteau have the house for her lifetime conditioned upon her continued compliance with the other terms; the language is reasonably susceptible of an inference that this is just what the parties intended. Therefore, there is a genuine question of material fact as to the intentions of the parties that cannot be answered solely from the language of the document itself, again making summary judgment inappropriate here.
Appellees suggest that the trial court could not have considered the affidavit offered by appellants in opposition to the motion for summary judgment under any circumstance because it is violative of section 90.602, Florida Statutes (1988) ("Deadman's statute"), so the Fecteaus could not have prevailed anyway and this court should affirm. First, it is not at all self-evident that the proffered affidavit or any other is an essential ingredient for the Fecteaus to prevail in these proceedings. But secondly, appellees moved below to strike the affidavit on section 90.602 grounds. The trial court declined to rule on the motion, finding that there was no ambiguity in the contract that would allow consideration of extrinsic evidence. The court's failure to rule means only that the trial court did not decide that question at all. Accordingly, we do not have that issue before us.
For the reasons previously indicated we reverse and remand for further appropriate proceedings.
REVERSED AND REMANDED.
DOWNEY, J., concurs.
DELL, J., concurs specially with opinion.
DELL, Judge, concurring specially.
I join with the majority in its reversal of the final summary judgment in favor of appellees. I am concerned, however, that the majority may have invaded the province of the trial court by its suggested interpretation of what the parties intended when they executed the agreement. The trial court should have an opportunity to make the factual determinations necessary to determine the parties' intent, based upon the evidence. This court's speculation as to the reasonable interpretation to be placed upon the parties' actions is inconsistent with the conclusion that genuine issues of material fact exist necessitating a reversal of the trial court's entry of the final summary judgment.