PER CURIAM.
Philips Lake Worth, L.P. (“Landlord”), appeals from a final summary judgment entered in favor of BankAtlantic. We agree with the Landlord that the contracts entered into by the parties, when read together, are ambiguous as to BankAtlantic’s right of termination, and we reverse.
The Landlord had an existing lease agreement with Pier 1, but entered into negotiations with BankAtlantic, which wished to build a bank in the space occupied by Pier 1. According to the parties’ pre-trial stipulation, BankAtlantic obtained site plan approval on July 12, 2007. On July 31, 2007, the parties signed two agreements. One was the Termination Of Lease agreement (“TOLA”), signed by the Landlord, BankAtlantic, and Pier 1. The other was a lease agreement (“Lease”), signed by the Landlord and BankAtlantic.
The TOLA states that the term “Existing Lease” refers to the lease between Pier 1 and the predecessor in interest to the Landlord, and that the term “Lease” refers to the lease between the Landlord *1223 and BankAtlantic. The TOLA provides the following in part:
... Whereas, upon BankAtlantic providing Pier 1 sixty (60) days written notice electing to terminate the Existing Lease (“Termination Notice”), the Existing Lease shall terminate as provided in this Termination Agreement and, upon the termination of the Existing Lease, Pier 1 will immediately vacate the Premises and shall be deemed released of all obligations under the Existing Lease accruing after termination.
[[Image here]]
2. On or before February 29, 2008 or such later date as the Landlord, Tenant and BankAtlantic may mutually agree upon (“Outside Date”), BankAtlantic shall have the right to deliver the Termination Notice to Pier 1.
3. In that event, BankAtlantic shall deliver the Termination Notice to Pier 1 and deliver to Escrow Agent the “Termination Fee” ..., then the Existing Lease shall be deemed terminated and null, void and of no further force and effect as of sixty (60) days after delivery of the Termination Notice to Pier 1 (with a copy to Landlord) and such Termination Fee to the Escrow Agent (“Termination Date”) and, in such event Pier 1 shall be required to vacate the Premises on or before the Termination Date.
[[Image here]]
... (a) In the event BankAtlantic does not deliver the Termination Notice to Pier 1 and deliver the Termination Fee to Escrow Agent on or before the Outside Date, then and in that event, the Lease shall terminate and Landlord and Ban-kAtlantie shall be released of all further obligations each to the other under the Lease and the Existing Lease shall remain in full force and effect.
[[Image here]]
The Lease includes the following relevant provisions:
Section 3.01 The Term and Tenant’s obligation to pay rent shall commence upon the termination of that certain lease agreement dated July 6, 1989 between ... (Landlord’s predecessor in interest), as landlord, and ... (Pier 1), as tenant, ... with respect to the Demised Premises, which termination shall be made pursuant to that certain termination of lease agreement (the “Termination of Lease Agreement”) dated as of the date hereof between Landlord, Tenant and Pier 1 (the “Commencement Date”).
[[Image here]]
Section 3.05 Notwithstanding anything contained in this Lease to the contrary, if within ninety (90) days of the execution of this Lease by both Landlord and Tenant, Tenant fails to obtain site plan approval for Tenant’s new building contemplated for construction on the Demised Premises, which failure is due solely to the non-compliance with an applicable legal requirement of a portion of the Shopping Center outside of the Demised Premises and outside of the scope of Tenant’s site plan, then Tenant shall notify Landlord within such ninety (90) day period of Tenant’s failure to obtain site plan approval, which notice shall include evidence that such failure was a result of the Shopping Center non-compliance together with all documentation reasonably necessary to evidence same. Landlord may, in its sole discretion, pursue site plan approval on behalf of Tenant and at Tenant’s cost and expense. Landlord shall have a period of six (6) months to obtain site plan approval on behalf of Tenant. In the event Landlord *1224 fails to obtain site plan approval within such six (6) month period but Landlord is diligently pursuing same, the six (6) month period shall be extended so long as Landlord is diligently pursuing the site plan approval. In the event that (a) Landlord was unable to obtain site plan approval or (b) Landlord does not wish to pursue site plan approval on behalf of Tenant, Landlord or Tenant may terminate this Lease on thirty (30) days written notice to the other party and in such event, this Lease shall terminate and be of no further force and effect as of the date of such termination. If Tenant fails to deliver the Termination Notice within the ninety (90) day period set forth above, Tenant’s right to terminate this Lease pursuant to this Section shall be null and void and of no further force and effect. Notwithstanding anything contained in this Section 3.05 to the contrary, if Tenant delivers to Pier 1, their Termination Notice (as defined in the Termination of Lease Agreement), Tenant’s right to cancel this Lease shall be null and void and of no further force and effect and Tenant shall have no right to terminate this Lease pursuant to this Article. In addition, in the event Tenant terminates this Lease, Tenant shall have no right to deliver the Termination Notice to Pier 1 in accordance with the provisions of the Termination of Lease Agreement, and Tenant shall indemnify, defend and hold Landlord harmless from and against any and all damages, costs and expenses incurred as a result of Tenant delivering the Termination Notice to Pier after Tenant has terminated this Lease. Landlord and Tenant acknowledge that Tenant’s right to possession of the Demised Premises under this Lease is subject and subordinate to Pier l’s rights under the Pier 1 Lease, and Landlord shall have no liability to Tenant, and Tenant shall have no right to withhold Rent under this Lease, in the event Pier 1 fails to vacate the Demised Premises.
Additionally, Section 39 of the Lease provides in part that the Lease is “effective as a Lease only upon execution and delivery thereof by both Landlord and Tenant.” According to the parties’ pretrial stipulation, the Lease was delivered and executed in September of 2007.
On January 3, 2008, BankAtlantic provided notice by letter that it did not intend to proceed with the Lease because of a change in expansion plans. The letter states that pursuant to paragraph 4(a) of the TOLA, BankAtlantic had elected not to terminate Pier l’s lease, and thus the Lease was null and void.
Subsequently, the Landlord filed a complaint alleging multiple counts, including breach of contract/specific performance, promissory estoppel, and declaratory judgment. BankAtlantic filed a motion for partial summary judgment, based on paragraph 4(a) of the TOLA. The Landlord also filed a motion for summary judgment.
At the hearing on the motions, the Landlord argued that the court should consider extrinsic evidence of email communications between the parties’ representatives, as well as deposition testimony of BankAtlantic’s representatives. However, the court granted BankAtlantic’s motion, finding that the language of paragraph 4(a) of the TOLA “unambiguously provides that in the event BankAtlantic does not issue a Termination Notice and deliver a Termination Fee by the Outside Date, the Lease terminates and the parties are released from all further obligations ... There is no conflict between the provisions that justifies reliance on extrinsic evidence.”
We review an order granting summary judgment de novo. PNC Bank, N.A. v. Progressive Emp’r Servs. II, 55 *1225 So.3d 655, 658 (Fla. 4th DCA 2011) (citation omitted). The question of whether contract language is ambiguous is also reviewed de novo. Torwest, Inc. v. Killilea, 942 So.2d 1019, 1020 (Fla. 4th DCA 2006) (citations omitted). Where an agreement comprises more than one document, the documents should be considered together in interpreting the parties’ agreement. J.G. Wentworth, S.S.C., L.P. v. Safeco Life Ins. Co., 755 So.2d 138, 138 (Fla. 4th DCA 1999). If contract language is unambiguous, the language reflects the parties’ intent. Fecteau v. Se. Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991). However, “[w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties.” Id. (quoting Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980)).
Here, the provisions of the TOLA and the Lease, when read together, are open to more than one reasonable interpretation as to BankAtlantic’s right of termination. BankAtlantic’s reading of paragraph 4(a) of the TOLA as a right of termination at any time, even if it obtains site plan approval, is at odds with the portions of Section 3.05 that give the Landlord up to a year to obtain site plan approval if BankAtlantic is not successful, and that restrict BankAtlantic’s right of termination.
Because the provisions of the Lease and TOLA are ambiguous when read together, summary judgment was not appropriate. We reverse and remand so that the Landlord may present appropriate extrinsic evidence. We reverse the costs judgment as well, and affirm the denial of the Landlord’s motion for summary judgment.

Affirmed in part, reversed and remanded in part.

POLEN, HAZOURI and LEVINE, JJ., concur.