DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HILLCREST COUNTRY CLUB LIMITED PARTNERSHIP,**
a Delaware limited partnership,
Appellant,

v.

**ZYSCOVICH, INC.,** a Florida corporation,
Appellee.

No. 4D18-3169

[January 22, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. 12-021362 (14).

Joseph H. Lang, Jr. and Kevin P. McCoy of Carlton Fields, P.A., Tampa, for appellant.

Richard Daniels and Ari Sweetbaum of Daniels Rodriguez Daniels Berkeley & Cruz, P.A., Coral Gables, for appellee.

GERBER, J.

A golf course owner, which was attempting to convert the golf course into residences, appeals from the circuit court's final order granting an architect's motion for summary judgment to be paid a bonus fee for services rendered to the owner.

The owner argues the circuit court erred in finding the bonus fee provision in the parties' contract had "only one reasonable interpretation" of the conditions which had to occur for the architect to be entitled to the bonus fee. According to the owner, the bonus fee provision's only reasonable interpretation was that another condition had to occur before the architect became entitled to the bonus fee.

Thus, the owner argues, the circuit court should have denied the architect's motion for summary judgment, and granted the owner's cross-motion for summary judgment, which sought a finding that the architect was not entitled to the bonus fee.

We conclude that the bonus fee provision was ambiguous, and that neither the architect nor the owner was entitled to summary judgment. Thus, we reverse and remand for a trial on the merits, during which the parties may present parol evidence allowing the trier of fact to interpret the bonus fee provision's meaning.

We present this opinion in three parts:
1. The contract's terms, including the bonus fee provision;
2. The parties' arguments; and
3. Our review.

## 1. *The Contract's Terms, Including the Bonus Fee Provision*

The parties' contract was entitled "Master Plan Design and Consulting Agreement." The contract's introduction provided, in pertinent part:

> The Architect will develop a Master Plan for the redevelopment and coordinate, in whole or part . . . the obtaining of the necessary zoning and other approvals from the applicable governmental entities and neighboring landowners, condominium associations, and cooperatives, etc. as appropriate.

The contract then provided that the architect was to perform its work in three phases: (1) a programmatic phase, in which the architect was to provide a preliminary report and pre-design analysis; (2) a master plan preliminary design phase; and (3) a master plan final design phase. The master plan final design phase would include "[a] professionally prepared full color rendering . . . plus sketches and drawings of the proposed project . . . *for use in the permitting process.*" (emphasis added).

The contract next provided that, for the work described above, the architect would be paid a base fee of $250,000. The contract further provided that services in addition to those described in the contract would be paid according to an hourly rate schedule.

Most importantly to this appeal, the contract's bonus fee provision stated, in pertinent part:

> *Upon approval of the removal of the restrictive covenant(s), approval of the City of Hollywood and any other required governmental agencies, [the architect] will be paid a Bonus Fee in the amount of $2,500 per unit with a cap of $1,250,000. The*

2

> *Bonus Fee shall be earned and payable upon receipt by the Owner of all approvals and permits necessary to develop the property in conformance with the Master Plan developed by Architect for the Project.* Notwithstanding the foregoing, the Bonus Fee shall be deemed earned and payable upon the sale by the Owner of the property to which the Master Plan developed by the Architect applies if the votes necessary to remove the covenant(s) restricting development of the property have been recorded regardless of whether the governmental approvals and permits necessary to develop the property have been obtained. Should the approvals and permits necessary to develop the property in conformance with the Master Plan developed by the Architect not be received within five (5) years of the date of this agreement, then the Architect's right to receive this Bonus Fee will terminate.

(emphasis added).

## 2. *The Parties' Arguments*

The parties do not dispute that the architect performed the three work phases, for which the owner paid the $250,000 base fee. The parties further do not dispute that the architect performed additional services, for which the owner paid according to the hourly rate schedule.

The parties also do not dispute that the two conditions referenced in the bonus fee provision's first sentence both occurred: (1) the neighboring residents' "approval of the removal of the restrictive covenant(s)" limiting the property's use to golf or recreational purposes; and (2) "approval of the City of Hollywood and any other required governmental agencies," of the architect's proposed master plan.

However, the parties dispute whether the condition referenced in the bonus fee provision's second sentence – the owner's receipt of all "approvals and permits necessary to develop the property in conformance with the Master Plan" was *in addition to*, or *synonymous with*, the first sentence's two conditions of the (1) "approval of the removal of the restrictive covenant(s)"; and (2) "approval of the City of Hollywood and any other required governmental agencies" of the architect's proposed master plan.

3

### a. *The Owner's Arguments*

The owner argues that the second sentence's condition was in addition to the first sentence's two conditions. More specifically, the owner argues, the second sentence's use of the phrase "approvals and permits necessary to develop the property in conformance with the Master Plan," means further approvals, such as building permits, which also would be necessary beyond the first sentence's conditions of the restrictive covenant's removal and the master plan's approval. According to the owner, it never received any building permits, because it abandoned the project when the real estate market crashed shortly after the City of Hollywood approved the architect's master plan. Thus, the owner argues, due to the second sentence's condition not occurring, it was entitled to a summary judgment that the architect was not entitled to the bonus fee.

The owner, to support its interpretation of the bonus fee provision, relies upon and applies certain rules of construction, as follows:

- "In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract." *Sugar Cane Growers Co-op. of Fla., Inc. v. Pinnock*, 735 So. 2d 530, 535 (Fla. 4th DCA 1999). According to the owner, the bonus fee provision uses "permits" three times, meaning the parties intentionally used that word for its own purpose. Further, the contract contemplated the master plan design phase would include "[a] professionally prepared full color rendering . . . plus sketches and drawings of the proposed project . . . *for use in the permitting process.*" (emphasis added).

- "Under Florida law, courts must give effect to the plain language of contracts when that language is clear and unambiguous." *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1269 (M.D. Fla. 2009) (citation omitted). According to the owner, "permits" carries its own meaning of "[a]n official document giving someone authorization to do something." Oxford Dictionary, http://en.oxforddictionaries.com/definition/permit.

- "As a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended." *Fowler v. Gartner*, 89 So. 3d 1047, 1048 (Fla. 3d DCA 2012) (citation omitted). According to the owner, the second sentence's use of the word "permits" must mean something different than the first and second sentences' use of the word "approval."

4

- "Language used in business documents . . . should be interpreted as reasonable persons, knowledgeable about the business or industry, would likely interpret them." *Hussmann Corp. v. UPS Truck Leasing, Inc.*, 549 So. 2d 215, 217 (Fla. 5th DCA 1989). According to the owner, even the architect's project manager testified that, in her experience, "it's common parlance" in the industry to refer to building permits simply as "permits."

- Courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Moore v. State Farm Mut. Auto Ins. Co.*, 916 So. 2d 871, 877 (Fla. 2d DCA 2005). According to the owner, treating the bonus fee provision's second sentence as synonymous with the provision's first sentence renders the second sentence meaningless.

In the alternative to its primary argument that it is entitled to summary judgment, the owner secondarily argues that if the first and second sentences create an ambiguity, then neither party is entitled to summary judgment, and the case should be set for trial so the parties can present parol evidence to assist a jury in determining the bonus fee provision's conditions and whether those conditions were satisfied.

### b. *The Architect's Arguments*

The architect argues the second sentence's condition was synonymous with the first sentence's two conditions. In other words, the architect argues, "approvals and permits necessary to develop the property in conformance with the Master Plan" means the same thing as the first sentence's conditions of the restrictive covenant's removal and the master plan's approval. Thus, the architect argues, because the first and second sentences' synonymous conditions occurred, it was entitled to summary judgment finding that it was entitled to the bonus fee.

To support its interpretation of the bonus fee provision, the architect also relies upon and applies certain rules of construction, as follows:

- "[T]he intention of the parties must be determined from an examination of the entire contract and not from separate phrases or paragraphs," *Alamo Fin., L.P. v. Mazoff*, 112 So. 3d 626, 630 (Fla. 4th DCA 2013) (citation omitted), and, "[a] primary rule of contract construction is that where provisions in an agreement appear to conflict, they should be construed so as to be reconciled, if possible. In so doing, the court should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the

5

whole agreement and its purpose," *Anarkali Boutique, Inc. v. Ortiz*, 104 So. 3d 1202, 1205 (Fla. 4th DCA 2012) (citation omitted). According to the architect, reading the entire contract as a whole, the contract's introduction required the architect to develop a master plan and coordinate the obtaining of the necessary zoning and other approvals from the applicable governmental entities and neighboring landowners. The contract's introduction did not contemplate the architect having to obtain building permits. Thus, the bonus fee provision cannot be interpreted as suggesting that obtaining building permits was a condition precedent to obtaining the bonus fee.

- "A true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the [courts] to prevent such interpretations." *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 1984). According to the architect, the owner's interpretation that the building permits had to be obtained would produce an absurd result, because obtaining building permits was wholly outside of the architect's control as the party solely performing master planning services under the contract. In the architect's words, "no prudent architect . . . would leave a $1,250,000 bonus up to the whim of the party paying for services, not performing them."

- Courts "will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Moore*, 916 So. 2d at 877. According to the architect, treating the bonus fee provision's second sentence as including additional conditions renders meaningless the first sentence's use of the phrase "will be paid a Bonus Fee" when the first sentence's conditions have been satisfied.

- "As a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication. . . . If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed." *In re Estate of Boyar*, 592 So. 2d 341, 343 (Fla. 4th DCA 1992) (citation omitted). According to the architect, because the bonus fee provision's second sentence does not use plain, unambiguous language to indicate that obtaining building permits is a condition precedent, the second sentence should not be construed as such. Doing so would cause a

6

forfeiture of the architect's bonus fee, which was earned when the first sentence's plain and unambiguous conditions were satisfied.

### 3. *Our Review*

Our review is de novo. *See Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000) (standard of appellate review applicable to grant of summary judgment is de novo); *Jackson v. The Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (a contract interpretation matter is a question of law subject to de novo review); *Phillips Lake Worth, L.P. v. BankAtlantic*, 85 So. 3d 1221, 1225 (Fla. 4th DCA 2012) ("The question of whether contract language is ambiguous is also reviewed de novo.").

"Whether a contract provision is ambiguous is a question of law, to be determined by the . . . court." *Hancock v. Brumer, Cohen, Logan, Kandell & Kaufman*, 580 So. 2d 782, 784 (Fla. 3d DCA 1991). "A contract should be read as a whole." *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011).

"An agreement is ambiguous if as a whole or by its terms and conditions it can reasonably be interpreted in more than one way." *Haggin v. Allstate Invs., Inc.*, 264 So. 3d 951, 954 (Fla. 4th DCA 2019) (citation omitted); *see also Hancock*, 580 So. 2d at 784 ("An ambiguous word or phrase in a contract has been defined as susceptible of interpretation in opposite ways or reasonably or fairly susceptible to different constructions.") (citations and internal quotations omitted).

Here, after reading the contract as a whole, and after considering the rules of construction upon which both parties have relied, we conclude the bonus fee provision is susceptible of interpretation in opposite ways and reasonably or fairly susceptible to different constructions. The arguments which each side has presented are both reasonable, and we can discern no reason to favor one rule of construction over the others in this case.

Regarding the owner's argument that the second sentence's use of the word "permits," as opposed to the first sentence's use of the word, "approval," should control here, we do recognize that "[a]s a general proposition, the use of different language in different contractual provisions strongly implies that a different meaning was intended." *Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC*, 278 So. 3d 857, 861 (Fla. 3d DCA 2019) (citation omitted). However, if that interpretation is correct, then we would have expected the bonus fee provision's first and second sentences to have been combined into one sentence, stating all the

conditions sequentially, and not separated into two sentences as occurred here. Moreover, neither the bonus fee provision, nor the contract as a whole, provides any guidance regarding the type of "permits" to which the bonus fee provision is referring. While we recognize that the word "permits" is often conjoined with the word "building" to create the term "building permits," we are not convinced without genuine issue of material fact that the word "permits" was intended to mean only "building permits."

Because we conclude that the bonus fee provision is reasonably susceptible to more than one construction, we further conclude that a genuine issue of material fact is presented which cannot be resolved by summary judgment. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999) ("Because the terms of the agreement are ambiguous and the record does not contain sufficient evidence to resolve the dispute, summary judgment was improper."); *Fecteau v. Southeast Bank, N.A.*, 585 So. 2d 1005, 1007 (Fla. 4th DCA 1991) ("When there are two reasonable interpretations [of a contract], summary judgment is inappropriate because there is a genuine issue of material fact."); *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st DCA 1987) ("[W]here the terms of [a] written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment.").

Based on the foregoing, we reverse and remand for a trial on the merits, during which the parties may present parol evidence allowing the trier of fact to interpret the bonus fee provision's meaning. *See Fecteau*, 585 So. 2d at 1007 ("[W]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties.") (citation omitted); *Talbott*, 59 So. 3d at 245 ("Where . . . a contract term is susceptible to more than one reasonable interpretation, extrinsic evidence may be considered by the court to ascertain the intent of the parties.").

All of the other arguments which the owner and the architect have made in this appeal are rendered moot by our decision.

*Reversed and remanded for proceedings consistent with this opinion.*

DAMOORGIAN and KLINGENSMITH, JJ., concur.

\*　　\*　　\*

*Not final until disposition of timely filed motion for rehearing.*