# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-1540
_____

DAVID A. CASEY and JOAN
QUINN CASEY,

     Appellants,

     v.

MISTRAL CONDOMINIUM
ASSOCIATION, INC.; DOLPHIN
DEVELOPERS, LLC; PANHANDLE
GETAWAYS, LLC and ELIZABETH
ARROWOOD CARROLL, Trustee of
the Revocable Trust of Elizabeth
Arrowood Carroll 2010,

     Appellees.

_____

On appeal from the Circuit Court for Walton County.
Jeffrey E. Lewis, Judge.

March 6, 2024

WINOKUR, J.

David and Joan Casey appeal the trial court's decision to award summary judgment in favor of Mistral Condominium Association, Inc. (the Association). For the reasons that follow, we reverse.

Originally constructed in 1985, the Mistral Condominium is located on the south side of Highway 30A in Seacrest Beach. The condominium consists of twenty-four units, with eight units on each of three floors. Each unit has a north-facing balcony on the parking lot side and a south-facing balcony with a view of the Gulf of Mexico. Unlike the north-facing balconies, the south-facing balconies can only be accessed through the individual condominium units.

In 2013, the Association started a painting project for the exterior of the condominium. As part of that project, the Association contracted with a company to pressure wash the exterior. During the cleaning process, the company discovered wood rot for both the north-facing and south-facing balconies. The Association then contracted with another company to perform a "full inspection." That inspection, completed in 2014, revealed additional wood rot.

In late 2015, the Association contracted with a construction company to conduct repairs. By early 2016, the company repaired all the north-facing balconies as well as all the south-facing balconies on the first floor. The company recommended that the Association repair the south-facing balconies on the second and third floor and submitted a quote for those repairs. Prior to April of 2016, however, the Association did not order the recommended repairs.

On April 4, 2016, while renting a third-floor Mistral unit, David Casey leaned against the railing on the south-facing balcony, causing the railing to collapse. Casey fell three stories to the sand dunes below. Casey survived the fall, but suffered significant injuries that required surgery.

Nearly two years later, the Caseys filed a complaint, alleging negligence on the part of several entities.[1] Regarding the

---

[1] Among these entities was the owner of the unit from which Casey fell. By the time of the summary judgment at issue in this

Association, the Caseys claimed that it "owed a duty to Plaintiffs to exercise a reasonable degree of care in maintaining and repairing the balcony railings."

The parties conducted numerous depositions – to include the deposition of unit owners, past and present Association presidents, the Association's corporate representative, and the owner of the construction company that conducted the repairs. When asked who had ultimate responsibility for maintaining the south-facing balcony railings, all the deponents identified the same entity: the Association. The Association's own corporate representative even testified that the south-facing balconies include "structural" components that fall under the sole responsibility of the Association.

The following table contains the relevant provisions of the Declaration of Condominium (DOC) at issue in this case:

_____

appeal, the unit owner, along with all defendants other than the Association, were no longer defendants in the case.

| Article I ("Definition of Terms"), Section 12 ("Condominium Unit") | Article VIII ("Maintenance, Repair, Alterations, and Improvements of Condominium Property"), Section B ("By the condominium parcel owner"), subsection (b) | Article VIII ("Maintenance, Repair, Alterations, and Improvements of Condominium Property"), Section A ("By the association"), subsection (c) |
|---|---|---|
| "The south balcony or deck area adjacent to each unit, as well as when applicable the south deck and stair area, is also a part of the condominium apartment." | "The responsibility of the condominium parcel owner shall be as follows... The unit floors and interior walls and the floor and interior wall of any south facing balcony, deck or stairs attached to the condominium units shall be maintained by the condominium unit owner thereof at his own expense. Owners may not alter, cut, [or] disturb any load bearing wall area within their respective unit." | "The association shall maintain, repair, and replace at the association's own expense... All portions of the units (except interior wall surfaces) contributing to the support of the building, which portions shall include, but are not limited to, common walkways, stairs, the outside walls of the building and load-bearing columns, but excluding interior non-bearing walls. Also included are walkways, decks, stairs, etc." |

Before trial commenced, the Association filed a motion for summary judgment. Citing Article I, Section 12, of the DOC, the Association argued that each south-facing balcony belongs to the owner of the accompanying unit. *See* Table, above ("The south balcony . . . is also a part of the condominium apartment.").

Citing Article VIII, Section B, subsection (b), the Association then argued that the unit owner—not the Association—had the responsibility to maintain the balcony railing attached to each unit. *See* Table, above ("The . . . floor and interior wall of any south facing balcony. . . shall be maintained by the condominium unit owner thereof at his own expense."). After asserting that the DOC terms were unambiguous, the Association characterized all the deposition testimony—including the testimony of its corporate representative—as inadmissible parol evidence.

In response to the Association's motion, the Caseys raised two arguments. First, the Caseys argued that the DOC contains a latent ambiguity regarding ownership of the balcony railings. According to the Caseys, while Article I, Section 12 states that a balcony belongs to the unit owner, the DOC does not specify who owns the balcony railing. Second, the Caseys argued that, regardless of ownership, the DOC assigned to the Association the exclusive duty to maintain the balcony railings. Pointing to Article VIII, Section A, (c), the Caseys asserted that the Association's responsibility to maintain "walkways, decks, [and] stairs" includes the duty to maintain the balcony railings.

During the hearing on the motion for summary judgment, the Association attempted to distinguish the south-facing balconies on first floor from the south-facing balconies on the second and third floor by labeling the former as "decks."  In making this argument, however, the Association did not explain why, given the phrase "south balcony *or deck*" in Article I, Section 12, the Association repaired the first floor south-facing "decks" but did not repair the second and third floor south-facing "balconies."  Nor did the Association address the inconsistent use of the term "deck" in Article VIII, Section B, subsection (b) and Article VIII, Section A, subsection (c). The Association simply proclaimed that "the use of the term deck there is not ambiguous."

Even though the Association's corporate representative admitted that the balconies contain "structural" elements, the Association did not address the last sentence of Article VIII, Section B, subsection (b), which prohibits unit owners from

5

altering, cutting, or disturbing "any load bearing wall area within their respective unit."

Finally, the Association described as "absurd" any attempt to characterize the balcony railings as exterior walls. In making this argument, however, the Association never explained the difference under Article VIII, Section B, subsection (b) between the "interior wall of any south facing balcony" and the exterior wall of such a balcony.

In the order granting the Association's motion for summary judgment, the trial court found that the terms that "define the property of the Association and that of the Condominium Unit are clear and unambiguous and, therefore, are not subject to the admission of parol evidence to interpret their meaning." Citing Article I, Section 12, the court determined that the balconies and the balcony railings belong to the unit owner. After quoting Article VIII, Section B, subsection (b), the court found that the individual unit owners, rather than the Association, were responsible for maintaining the balcony railings. Therefore, the court concluded that the Association owed the Caseys no duty of care to maintain the railing that gave way and caused him to fall.

II

A. *Negligence*

The tort of negligence includes four elements: duty; breach; causation; and damages. *See e.g., Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 389 (Fla. 2015) ("We have long held that to succeed on a claim of negligence, a plaintiff must establish the four elements of duty, breach, proximate causation, and damages."). This appeal involves the first element, whether the defendant owed the plaintiff a legal duty.

Ordinarily, the first element is a question of law for the trial court to decide rather than a question of fact reserved for the jury. *See Williams v. Davis*, 974 So. 2d 1052, 1057 n.2 (Fla. 2007) ("[E]stablishing the existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party, and is ultimately a question

of law for the court rather than a jury." (citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 501 (Fla. 1992))).

However, if the plaintiff alleges that a written instrument establishes the defendant's duty, and if that instrument contains an ambiguity as to existence or extent of that duty, then the first element becomes a question of fact for the jury to decide. *See Friedman v. Virginia Metal Prods. Corp.*, 56 So. 2d 515, 516 (Fla. 1952) (citing 53 Am.Jur., Sec. 268 on Trials, p. 227, and Wigmore on Evidence (3d ed), Sec. 2556, p. 523) ("It is a cardinal rule, that the construction of all written instruments, is a question of law and belongs to the courts, provided: 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences'."); *see also Critchlow v. Williamson*, 450 So. 2d 1153, 1156 (Fla. 4th DCA 1984) ("However, if a provision is ambiguous, the matter must be submitted to the finder of fact." (citing *Hoffman v. Terry*, 397 So. 2d 1184 (Fla. 3d DCA 1981))).

## B. *Parol Evidence*

The Supreme Court of Florida has described the parol evidence rule as follows:

> "[T]he terms of a valid written contract or instrument cannot be varied by a verbal agreement or other extrinsic evidence where such agreement was made before or at the time of the instrument in question. * * * The rule inhibits the use of parol evidence to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to charge, add to, or subtract from it, or affect its construction."

*J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So. 2d 484, 485–86 (Fla. 1957) (quoting 13 Fla. Jur., Sec. 383, pp. 380–381).

## C. *Summary Judgment*

Florida recently adopted the Federal summary judgment standard. *See In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 74 (Fla. 2021); Fla. R. Civ. P. 1.510(a) ("The summary

judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard."). Under the federal summary judgment rule, any party may "put the ball in play" by filing a motion for summary judgment that identifies a claim or defense that lacks a factual basis. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); *see also* Fla. R. Civ. P. 1.510(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). However, the moving party must do more than simply attack the strength of the nonmoving party's case; it must show "that there is an absence of evidence to support" a claim or defense raised by the nonmoving party. *See* Fla. R. Civ. P. 1.510(c):

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*See also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018) ("[I]f the nonmoving party must prove X to prevail [at trial], the moving party at summary judgment can either produce evidence that X is not so or point out that the nonmoving party lacks the evidence to prove X."); *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 412 (4th Cir. 2022) ("[T]he aim of summary judgment is not to determine the exact strength of a case and dispose of so-called weak cases, but instead to determine whether a rational jury *could* find in the plaintiff's favor such that the case should continue.").

Thus, Rule 1.510(c) places an initial burden on the moving party to "demonstrate the absence of a genuine issue of material fact" in a claim or defense raised by the nonmoving party. *Celotex*, 477 U.S. at 322–23 (citations omitted):

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*See also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").

If the moving party fails to satisfy its initial burden, then the nonmoving party need not present any evidence in opposition to the motion for summary judgment. *See Id.* at 1102–03 (citations omitted) ("If a moving party fails to carry its initial burden of production, [then] the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.").

If, however, the movant satisfies its initial burden, "[t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Garside*, 895 F.2d at 48 (citations omitted). To satisfy that burden, the nonmoving party "must present competent evidence that shows a genuine issue for trial." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 496–97 (1st Cir. 2011) (citing *Ruiz–Rosa v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote & citations omitted) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"); *Hill v. Kia Motors Am., Inc.*, No. 20-5690, 2022 WL 557823, at *24 (6th Cir. Feb. 24, 2022)

(Bush, J., dissenting) ("So the question under Rule 56 is not whether the record *somewhere* contains a triable issue, but whether the nonmovants—here, plaintiffs—met their burden and *demonstrated* those issues with specific record citations in their response to [defendant's] motion for summary judgment.").

In short, the nonmoving party must identify a disputed fact that could affect the outcome of trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986):

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*See also Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013) (citations omitted):

> The nonmovant need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must "go beyond the pleadings" (e.g., produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict" in her favor.

If the nonmoving party fails to make that showing, then the trial court should award summary judgment in favor of the moving party. *See* Fla. R. Civ. P. 1.150(e). If, however, the nonmoving party does demonstrate a genuine issue of material fact, then the trial court should deny the motion. *See* Fla. R. Civ. P. 1.150(e).

III

In this case, the Association put the ball in play by asserting in a motion for summary judgment that, under the unambiguous terms of the DOC, it owed the Caseys no duty of care to maintain the rotted balcony railing that gave way. Satisfying its initial burden under Rule 1.510(c), the Association identified the following deficiency in the Caseys' negligence claim: Article I, Section 12, of the DOC states that the owner of the condominium unit also owns the balcony; therefore, under Article VIII, Section B, subsection (b), only the owner of the unit owed the Caseys a duty of care to maintain the balcony railing.[2]

The burden then shifted to the Caseys. They pointed to Article VIII, Section A, (c), of the DOC and argued that, regardless of ownership, the Association had a duty to maintain all the balcony railings. *See Matsushita*, 475 U.S. at 586; *Garside*, 895 F.2d at 48. This showing satisfied the Caseys burden as the nonmoving party,

With their response to the Association's motion for summary judgment, the Caseys presented a reasonable interpretation of the DOC that, under Florida substantive law, created a genuine dispute as to a material fact. *See Fecteau v. Se. Bank, N.A.*, 585 So. 2d 1005, 1007 (Fla. 4th DCA 1991) ("When there are two reasonable interpretations, summary judgment is inappropriate because there is a genuine issue of material fact."); *accord In re Color Tile Inc.*, 475 F.3d 508, 515–16 (3d Cir. 2007) ("Given two conflicting but reasonable interpretations, a contract will be viewed as ambiguous at [the] early stage [of summary judgment]."). Accordingly, the trial court committed reversible error when it granted summary judgment in favor of the Association. *See Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. 1st DCA 1987) ("Where the terms of [a] written instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment." (citing *Langner v. Charles A.*

---

[2] Even if we were to find that the Association did not meet its initial burden, the result here would be the same: reversal.

11

*Binger, Inc.*, 503 So. 2d 1362, 1363 (Fla. 3d DCA 1987))); *accord Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999) ("In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment.").

Finally, the trial court erroneously rejected the deposition testimony as parol evidence. Because the deponents testified about their actions and their understanding of the DOC well after execution of the written instrument, their testimony does not fall under the scope of the parol evidence rule. *See The Race, Inc. v. Lake & River Recreational Properties, Inc.*, 573 So. 2d 409, 410–11 (Fla. 1st DCA 1991) (citations omitted) ("[T]he parol evidence rule is of course directed against verbal agreements between the parties to a written contract, made before or at the time of the execution of the contract, but it does not prohibit the admission of a *subsequent* oral agreement that alters, modifies, or changes the former existing agreement between the parties."); *see also Pavolini v. Williams*, 915 So. 2d 251, 254 (Fla. 5th DCA 2005) ("The parol evidence rule applies to verbal agreements between the parties to a written contract which are made before or at the time of execution of the contract. It does not apply to the admission of subsequent oral agreements that alter, modify, or change the former existing agreement between the parties.").

For the foregoing reasons, we reverse the trial court's decision to grant summary judgment in favor of the Association; and, we remand for the trial court to continue proceedings consistent with this opinion.

REVERSED and REMANDED.

B.L. THOMAS and LONG, JJ., concur.

12

-------------------------

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

-------------------------

Dana C. Matthews and C. Stephen Tatum of Matthews & Jones, Destin; and Darren W. Penn and John D. Hadden of Penn Law, LLC, Atlanta, GA, pro hac vice, for Appellants.

Scott A. Cole and Francesca M. Stein of Cole, Scott & Kissane, P.A., Miami; Mark D. Tinker of Cole, Scott & Kissane, P.A, Tampa; and D. Grayson Miller of Cole, Scott & Kissane, P.A., Pensacola, for Appellee Mistral Condominium Association, Inc.